UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROBESPIERRE ROBLES HURTADO, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 24-3270 (PLF) |
| RAFAEL FOLEY, et al.,[1] | ) ) ) | |
| Defendants. | ) ) ) | |

OPINION AND ORDER

On March 20, 2024, Plaintiff Robespierre Robles Hurtado, a citizen and resident of México, filed an E-2 Treaty Investors Visa Application with the U.S. Consulate in Ciudad Juárez, México. See Compl. ¶¶ 2, 4. The consular officer ultimately refused Mr. Hurtado's application and placed it in "administrative processing." Id. ¶ 4. Mr. Hurtado asks the Court to compel defendants to adjudicate his visa application. See generally id.

Pending before the Court is defendants' motion to dismiss Mr. Hurtado's complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Defs. Mot. Upon careful consideration of the parties' written submissions and the relevant authorities, the Court grants defendants' motion and dismisses Mr. Hurtado's complaint.[2]

---

[1]  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, current U.S. Secretary of State Marco A. Rubio is "automatically substituted" as a party to this litigation.

[2]  The Court has reviewed the following papers in connection with this matter: Plaintiff's Petition for Writ of Mandamus and Complaint for Injunctive Relief ("Compl.") [Dkt. No. 1]; Defendants' Motion to Dismiss ("Defs. Mot.") [Dkt. No. 5]; Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Pl. Opp.") [Dkt. No. 6];

## I. BACKGROUND

### A. Statutory Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., authorizes the issuance of different types of visas to certain categories of foreign nationals. At issue in this case is an E-2 Treaty Investor visa, which allows foreign nationals to enter and remain in the United States for up to two years "to develop and direct the operations of an enterprise" in which they have invested "a substantial amount of capital," or "of an enterprise in which [they are] actively in the process of investing[ ] a substantial amount of capital." Id. § 1101(a)(15)(E)(ii). A foreign national seeking an E-2 visa must be from a country that has a treaty in place with the United States permitting its citizens to obtain those visas. See id. § 1101(a)(15)(E). Spouses and children of those foreign nationals may be eligible for the same E-2 visas as "derivatives." See 9 Foreign Affs. Manual ("FAM") § 402.9-9(a); see also 8 U.S.C. § 1101(a)(15)(E).

To secure an E-2 visa, a foreign national generally must submit a Form DS-160, the Online Nonimmigrant Visa Application, and appear for an interview before a consular officer at the U.S. Consulate in their country of residence. 8 U.S.C. § 1202(h); see also 22 C.F.R. § 41.101; 9 FAM § 403.5-2. The applicant bears the burden of demonstrating that they are eligible to receive a visa. See 8 U.S.C. § 1361. "All nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d). After the visa interview, the consular officer must either "issue the visa" if the applicant has "properly completed and executed" their visa application, or "refuse the visa" if the applicant has not established their eligibility to receive a visa. 22 C.F.R. § 41.121(a); see also 8 U.S.C. §§ 1201(a)(1)(B), (g).

---

Defendants' Reply in Further Support of Defendants' Motion to Dismiss ("Defs. Rep.") [Dkt. No. 7]; and Plaintiff's Notice of Supplemental Authority ("Notice") [Dkt. No. 8].

Consular officers "must ensure" that visa applications are "properly and promptly processed in accordance with the applicable regulations and instructions," 22 C.F.R. § 41.106, and "may not temporarily refuse, suspend, or hold the visa for future action." 9 FAM § 403.7-3.

"If a visa applicant has not established that he or she is eligible for a visa, the consular officer must refuse that application." See U.S. Department of State, Administrative Processing Information, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html [https://perma.cc/X7WF-2WXS] (last visited Sept. 23, 2025). But the consular officer "may determine that additional information from sources other than the applicant may help establish an applicant's eligibility for a visa," and "[i]n such cases, refused visa applications warrant further administrative processing." Id. "Upon completion of the case-specific administrative processing, the consular officer might conclude that an applicant is now qualified for the visa for which he or she applied," or "[a]lternatively, the officer may conclude that the applicant remains ineligible for a visa." Id.

B. Factual and Procedural Background

Plaintiff alleges that since 2017, he "has invested more than $500,000 in Thompson San Antonio Luxury Hotel & Condominiums in the United States." Compl. ¶ 3. Plaintiff further alleges that he "is a public notary," "owns his business," and therefore is "eligible for an E-2 Treaty Investor visa." See id. On March 20, 2024, plaintiff filed an E-2 visa application of which his wife and his stepdaughter are derivative applicants. See id. ¶ 23. Plaintiff and his family thereafter submitted their Form DS-160 nonimmigrant visa applications, see id. ¶ 24, and appeared for a visa interview before the U.S. Consulate General in Ciudad Juárez, México on May 21, 2024. See id. ¶ 25. After the visa interview, plaintiff and his family were informed that their visa applications were refused, and that their cases would be placed in

3

"administrative processing" pursuant to the INA, Section 221(g).  See id. ¶ 26; see also id. at Ex. A.  Plaintiff's wife was asked to submit a copy of the divorce certificate from her previous marriage, and plaintiff was asked to submit Form DS-5535 to the consulate via email.  See id. ¶ 26.  As requested, plaintiff submitted Form DS-5535 via email on May 28, 2024.  See id.

The current status of plaintiff's and his family's visa applications appears on the U.S. Department of State Consular Electronic Application Center website as follows:

> A U.S. consular officer has adjudicated and refused your visa application . . . .  If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing.  You will receive another adjudication once such processing is complete.

Compl. ¶ 29; see also id. at Ex. A.  Plaintiff alleges that he has "inquired as to the status of [his and his family's] visa applications," see id. ¶¶ 31, 32, but "[t]he U.S. Consulate General in Ciudad Juárez has provided . . . no meaningful status updates, nor [has] it publish[ed] any information on processing times for 'administrative processing.'"  Id. ¶ 33.  Plaintiff alleges "significant personal, emotional, and financial hardship" due to defendants' delay.  Id. ¶ 6.

On November 19, 2024, plaintiff filed this action against Antony J. Blinken, former U.S. Secretary of State (replaced by Secretary Marco A. Rubio on January 21, 2025), Rafael Foley, Consul General of the U.S. Consulate General in Ciudad Juárez, México, and Mark Coolidge Johnson, Deputy Chief of Mission at the U.S. Embassy in México, in their official capacities (collectively, "defendants").  See Compl. ¶¶ 20-22.  Plaintiff alleges that defendants have unreasonably delayed the final adjudication of his and his family's visa applications, and seeks to compel defendants to adjudicate the applications under the APA, 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361.  See id. ¶¶ 36-65.

On January 24, 2025, defendants filed a motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Defs. Mot. On February 7, 2025, plaintiff filed his opposition to defendants' motion. See Pl. Opp. On February 14, 2025, defendants filed their reply. See Defs. Rep.

## II.  LEGAL STANDARD

### A.  Motions to Dismiss Under Rule 12(b)(1) of the Federal Rules of Civil Procedure

Federal courts are courts of limited jurisdiction, possessing only those powers authorized by the Constitution and an act of Congress. See Janko v. Gates, 741 F.3d 136, 139 (D.C. Cir. 2014); Abulhawa v. U.S. Dep't of the Treasury, 239 F. Supp. 3d 24, 30 (D.D.C. 2017). Lack of subject matter jurisdiction is fatal to a court's authority to hear a case. See FED. R. CIV. P. 12(h)(3). The plaintiff bears the burden of establishing that the Court has jurisdiction. See Khadr v. United States, 529 F.3d 1112, 1115 (D.C. Cir. 2008); Walen v. United States, 246 F. Supp. 3d 449, 452 (D.D.C. 2017). In determining whether to grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the plaintiff's favor and treat all well-pleaded factual allegations as true. See Attias v. CareFirst, Inc., 865 F.3d 620, 627 (D.C. Cir. 2017). Although the Court must grant a plaintiff the benefit of all reasonable inferences, it "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint," and the Court need not accept a plaintiff's legal conclusions. Disner v. United States, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting Speelman v. United States, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)). In determining whether a plaintiff has established

5

jurisdiction, the Court may consider materials beyond the pleadings where appropriate. See Cumis Ins. Soc'y, Inc. v. Clark, 318 F. Supp. 3d 199, 207 (D.D.C. 2018).

### B. Motions to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must plead facts that "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570); see Spence v. U.S. Dep't of Veterans Affs., 109 F.4th 531, 539 (D.C. Cir. 2024). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. at 678).

In deciding a motion to dismiss under Rule 12(b)(6), the Court "must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Sanchez v. Off. of State Superintendent of Educ., 45 F.4th 388, 395 (D.C. Cir. 2022); see also Ashcroft v. Iqbal, 556 U.S. at 678. The Court considers the complaint in its entirety, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), and construes it liberally, granting plaintiffs "the benefit of all inferences that can [reasonably] be derived from the facts alleged." Sickle v. Torres Advanced Enter. Sols., LLC., 884 F.3d 338, 345 (D.C. Cir. 2018). The Court, however, need not accept all inferences drawn by the plaintiff "if such inferences are unsupported by the facts set out in the complaint." Nurriddin v. Bolden, 818 F.3d 751, 756

6

(D.C. Cir. 2016).  Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. at 678; see also Kaempa v. Myers, 367 F.3d 958, 963 (D.C. Cir. 2004) ("Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.").

### III.  DISCUSSION

Plaintiff challenges defendants' "failure to issue a final adjudication of Plaintiff and his family's visa applications within a reasonable time," Compl. ¶ 13, and alleges causes of action arising under both Section 706(1) of the APA and the Mandamus Act, 28 U.S.C. § 1361.  See Compl. ¶¶ 36-65.  To prevail under either statute, plaintiff must demonstrate that the State Department has "failed to take a discrete agency action that it is required to take."  Karimova v. Abate ("Karimova"), Civil Action No. 23-5178, 2024 WL 3517852, at *1 (D.C. Cir. July 24, 2024) (quoting Norton v. S. Utah Wilderness All. ("Norton"), 542 U.S. 55, 64 (2004)).  Put differently, as a threshold matter, plaintiff must identify a discrete, non-discretionary duty for the State Department to take further action on his and his family's visa applications.  See Skalka v. Kelly, 246 F. Supp. 3d 147, 152 (D.D.C. 2017) ("The standard by which a court reviews this type of agency inaction is the same under both § 706(1) of the APA and the Mandamus Act.").  The Court has no authority to compel discretionary agency actions that are "not demanded by law (which includes . . . agency regulations)."  Norton, 542 U.S. at 65.

The Court finds that plaintiff has failed to identify a discrete, non-discretionary duty requiring defendants to take further action on plaintiff and his family's visa applications.[3]

---

[3]  Defendants argue that "[b]ecause Plaintiff is seeking to compel action after a consular officer has refused the requested visa, this suit runs headfirst into the consular non-reviewability doctrine."  Defs. Mot. at 9.  Because the Court agrees that plaintiff has not identified a discrete, non-discretionary duty that defendants must fulfill for an already-refused

7

In a recent, unpublished opinion, the D.C. Circuit rejected a visa applicant's APA claims for lack of a discrete, non-discretionary duty:  in Karimova v. Abate, a consular officer interviewed the plaintiff, "officially refused" her visa application, and "placed her application in administrative processing in order to verify qualifications for [her requested] visa." Karimova, 2024 WL 3517852, at *2.  The plaintiff filed suit alleging that the consular officer had breached their duty under Section 555(b) of the APA to "make a final decision" on plaintiff's visa application because a refusal for administrative processing "is not a final decision." Id.  By "final decision," the plaintiff meant that the consular officer was "required to either issue her a visa or refuse her application, without then also placing it in administrative processing." Id. at *3.

The plaintiff, "[i]nvoking both the Administrative Procedure Act and the Mandamus Act, . . . asked the court to compel the consular officer to perform her duty to finally adjudicate her visa." Karimova, 2024 WL 3517852, at *2.  The government moved to dismiss plaintiff's complaint, arguing "that courts cannot review consular actions on visa applications, and that, in any event, there had not been unreasonable delay in processing" plaintiff's visa application.  Id. at *3.  The district court granted the government's motion to dismiss.  Id.

The D.C. Circuit affirmed, explaining that because the plaintiff's visa application was refused before it was placed into administrative processing, plaintiff's "matter ha[d] already been conclude[d]." Karimova, 2024 WL 3517852, at *4.  In other words, the plaintiff had "received the 'refused' decision that the law expressly authorizes as one of the allowed actions on a visa application." Id. (citing 22 C.F.R. § 42.81 and 8 U.S.C. § 1201(g)).  The Circuit noted that "even on [the plaintiff's] reading, Section 555(b) at most could have entitled her to the

---

visa application, see id. at 4, the Court need not consider defendants' alternate argument that plaintiff's claims should be dismissed under the consular non-reviewability doctrine.

8

official refusal decision she already received [because] Section 555(b) does not in any way dictate how the agency can handle her rejected paperwork after a decision has been made." Id. (emphasis in original).  Accordingly, the court of appeals concluded that there was no legal basis to compel agency action under Section 555(b) of the APA or the Mandamus Act because the plaintiff failed to identify a clear, non-discretionary duty requiring the government to further adjudicate her already-refused visa application.  See Karimova, 2024 WL 3517852, at *3.[4]

Karimova's facts are not meaningfully distinguishable from the facts at issue here, and the Court finds the D.C. Circuit's reasoning in Karimova persuasive.  See Datta v. Rubio ("Datta"), Civil Action No. 24-2937 (PLF), 2025 WL 752643, at *7 (D.D.C. Mar. 10, 2025) (adopting Karimova's reasoning); see also Baradaran v. Rubio, Civil Action No. 24-2946 (DLF), 2025 WL 2506546, at *2 (D.D.C. Sept. 2, 2025) ("Although the Court does not view Karimova as binding . . . its reasoning is persuasive."); Sabeti v. Blinken, Civil Action No. 24-2627 (TSC), 2025 WL 2457753, at *3 (D.D.C. Aug. 26, 2025) ("[T]he court finds Karimova persuasive."); Pour v. Rubio, Civil Action No. 25-573 (JEB), 2025 WL 2374559, at *5 (D.D.C. Aug. 14, 2025) ("Regardless of whether Karimova is actually binding, it is still a case decided by the Circuit that contains reasoning that the Court finds persuasive as to the APA."); Doroodchi v. Rubio, Civil Action No. 24-3170 (CRC), 2025 WL 1865114, at *4 (D.D.C. July 7, 2025) (applying Karimova as "the considered and unanimous judgment of a D.C. Circuit panel"); Moradi v. Rubio, Civil Action No. 24-2902 (GMH), 2025 WL 1865110, at *6 (D.D.C. July 7, 2025) (accepting Karimova's persuasive value because it was "entered following oral

---

[4] Judges in this district are split as to whether the D.C. Circuit's unpublished decision in Karimova is precedential.  See Datta, 2025 WL 752643, at *6 n.3 (collecting cases). The Court declines to wade into this debate, and instead concludes that Karimova's reasoning is persuasive in granting defendants' motion to dismiss.

argument and includes a rather lengthy exegesis of its legal reasoning."). Consistent with the D.C. Circuit's holding in Karimova—and this Court's holding in Datta—the Court rejects plaintiff's claim that Section 555(b) of the APA imposes a further duty to act on a refused visa application that is placed in administrative processing. See Datta, 2025 WL 752643, at *7.[5]

Plaintiff also points to Section 1202(d) of the INA as imposing a discrete, non-discretionary duty on defendants to take further action on his and his family's visa applications. See Pl. Opp. at 12. Section 1202(d) provides that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d). The statute's implementing regulations similarly require that after "a visa application has been properly completed and executed in accordance with the provisions of the INA, . . . the consular officer must issue the visa [or] refuse the visa." 22 C.F.R. § 41.121(a). These provisions indeed create a discrete, non-discretionary duty to review and adjudicate all visa applications, and to either issue or refuse the visa after the application is executed. But they stop short of creating a duty to further adjudicate a visa application that has already been refused by a consular officer and placed in administrative processing. See Pour v. Rubio, 2025 WL 2374559, at *5 (finding the same); see also Doroodchi v. Rubio, 2025 WL 1865114, at *4 ("Section 1202(d) likewise does not create a duty to further adjudicate a visa placed into administrative processing.").

---

[5]  Though the D.C. Circuit did not discuss Section 706(1) of the APA in Karimova, that provision also cannot act as a source of independent duties for consular officers because it is just as general and indistinct as Section 555(b) of the APA. Compare 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it"), with 5 U.S.C. § 706(1) ("The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed."). Given Karimova's holding, plaintiff cannot rely on either Section 555(b) or Section 706(1) to establish a discrete, non-discretionary duty for agency officials to take further action on an already-refused visa application that has been placed in administrative processing. See Pour v. Rubio, 2025 WL 2374559, at *4 (finding the same).

As plaintiff acknowledges, a consular officer "refused" plaintiff's and his family's visa applications following an interview in May 2024.  See Compl. at Ex. A.  A consular officer therefore "reviewed" plaintiff's and his family's properly executed visa applications, see 8 U.S.C. § 1202(d), but ultimately "refuse[d] the visa."  22 C.F.R. § 41.121(a).  Defendants therefore discharged their discrete, non-discretionary duty under Section 1202(d) of the INA and its implementing regulations.  See Karimova, 2024 WL 3517852, at *4 ("[Plaintiff] received the 'refused' decision that the law expressly authorizes . . . ." (quoting 22 C.F.R. § 42.81)).[6]

Still, the Court acknowledges that it is "extremely difficult to square" the Court's holding in the instant case, and the D.C. Circuit's analysis in Karimova, "with the communications that visa applicants actually receive from various consulates."  Ibrahim v. Spera, 2024 WL 4103702, at *3 n.2; see also Datta, 2025 WL 752643, at *8.  That is why Karimova's practical effect troubles this Court:  when strictly applied, "Karimova gives agencies

---

[6] On September 9, 2025, plaintiff submitted a Notice of Supplemental Authority informing the Court of Judge Loren L. AliKhan's recent decision in Mehrpooya v. Allen, Civil Action No. 24-2340 (LLA), 2025 WL 2549279 (D.D.C. Sept. 4, 2025).  There, Judge AliKhan denied the government's motion to dismiss a visa applicant's claims of unreasonable delay under the APA and the Mandamus Act.  See id.  Judge AliKhan reasoned that "consular officials have a non-discretionary duty to fully adjudicate a visa application," and that "[i]ssuing a final decision on a visa application is plainly a discrete agency action [that] is required by both the APA and federal regulations."  Id. at *7.  Declining to follow Karimova, Judge AliKhan held that "[i]t is impossible to square Defendants' assertion that placement in 'administrative processing' was a final disposition of [the plaintiff's] visa application with the allegations in [plaintiff's] complaint," and therefore concluded that defendants had not fulfilled their legal duty under the APA and federal regulations to finally adjudicate plaintiff's visa.  Id. at *5 (emphasis added).

The Court respectfully disagrees with Judge AliKhan's holding in Mehrpooya v. Allen.  For reasons already discussed, the Court concludes that refusal of a visa application pursuant to Section 221(g) of the INA satisfies defendants' discrete, non-discretionary duty to "review[ ] and adjudicate[ ]" a visa application, see 8 U.S.C. § 1202(d), and then to "issue the visa [or] refuse the visa."  22 C.F.R. § 41.121(a).  The Court also agrees with the D.C. Circuit's finding in Karimova that Section 555(b) of the APA imposes no additional legal duty beyond the initial refusal.  See Karimova, 2024 WL 3517852, at *6; see also Datta, 2025 WL 752643, at *7.

11

carte blanche to administratively process noncitizens' visa applications <u>ad infinitum</u> with no avenue for judicial review." <u>Datta</u>, 2025 WL 752643, at *8. But as explained in <u>Datta</u>, "the statutory gap that, in theory, allows agencies to issue pro forma refusals while continuing to administratively process visa applications is best filled by Congress, not this Court." <u>Id</u>. at *9.

The Court thus finds that it lacks jurisdiction to compel defendants to further adjudicate plaintiff and his family's visa applications. Plaintiff's suit must be dismissed for lack of subject matter jurisdiction and failure to state a claim for relief. Accordingly, it is hereby

ORDERED that defendants' Motion to Dismiss [Dkt. No. 5] is GRANTED; it is

FURTHER ORDERED that plaintiff's Petition for Writ of Mandamus and Complaint for Injunctive Relief [Dkt. No. 1] is DISMISSED; and it is

FURTHER ORDERED that this case is DISMISSED WITHOUT PREJUDICE pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This is a final appealable order. <u>See</u> FED. R. APP. P. 4(a).

SO ORDERED.

*[signature]*
PAUL L. FRIEDMAN
United States District Judge

DATE: 9/29/25